**MATTHEW RIGHETTI, ESQ. {121012}**
matt@righettilaw.com
**JOHN GLUGOSKI, ESQ. {191551)**
jglugoski@righettilaw.com
**MICHAEL RIGHETTI, ESQ. {258541}**
mike@righettilaw.com
**RIGHETTI • GLUGOSKI, P.C.**
456 Montgomery Street, Suite 1400
San Francisco, CA 94104
Telephone: (415) 983-0900
Facsimile:   (415) 397-9005

**CHARLES A. JONES  ESQ. {SBN 224915}**
**KELLY MCINERNEY ESQ. {SBN 200017}**
**JONES LAW FIRM**
9585 Prototype Court, Suite B
Reno, Nevada 89521
Telephone:  (775) 853-6440
Facsimile:   (775) 853-6445
caj@cjoneslawfirm.com
kelly@cjoneslawfirm.com

Attorneys for Plaintiff, individually, and on behalf of others similarly situated

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAOUL BENNETT, on behalf of herself and all similarly situated persons,<br><br>                      Plaintiff,<br><br>    vs.<br><br>Lead Info Stream Inc., dba Promedia Leads, and Leadpoint, Inc.<br><br>            Defendants | Case No.:   **'14CV1316 H     JLB**<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**<br><br>**DEMAND FOR JURY TRIAL** |

1

**CLASS ACTION COMPLAINT**

Plaintiff, RAOUL BENNETT, ("Plaintiff") brings this action on behalf of herself and the alleged class of persons similarly situated against Defendant LEAD INFO STREAM INC. dba PROMEDIA LEADS and Defendant LEADPOINT, INC. and other unknown Defendants whose involvement in the alleged acts complained of herein will be the subject of immediate discovery ("Defendants") for violations of the Telephone Consumer Protection Act ("TCPA").

## PRELIMINARY STATEMENT

1.      Defendant LEAD INFO STREAM INC. represents itself as a "direct advertiser specializing in lead generation and inquiry for the financial, educational, health, and travel industries.  The multifaceted company develops technology and media assets to engage targeted consumers seeking information.  Leads, which consist of real-time consumer requests, are captured, validated, and delivered to product and service providers."  Defendant LEAD INFO STREAM INC. also does business as PROMEDIA LEADS, which represents itself as a "[specialist] in providing the highest quality financial, educational, health and travel leads. Leads consist of real time consumer requests, which are captured, validated, and delivered to product and service providers. Our technology allows information to be double verified by our internal quality control team. ProMedia Leads is the leader in call center marketing using in-bound and out-bound targeted dialer solutions to create a fun fast paced work environment." These representations are found on Defendants' respective websites at www.leadinfostream.com and www.promedialeads.com.

2.      Consistent with their representations to act as call center marketers, Defendants engaged in marketing/advertising campaigns and together made or caused to be made and benefitted/profited from unauthorized "robocalls" to cellular telephone numbers throughout California and the greater United States.

3.      Defendant, LEADPOINT, INC. is a third party marketing company, which advertises itself on its website at www.leadpoint.com as follows:   "The Lead

Marketplace is the lead generation industry's most comprehensive trading platform. Only LeadPoint connects lead buyers and sellers through public and private auctions, ensuring transparent and efficient transactions." Leadpoint, Inc. engages/participates in the for-profit business of buying and selling leads from call centers, including Co-Defendants, to other third party end-users of such leads, (e.g. solar panel installation companies, mortgage refinance companies, etc.). Defendant Lead Point Inc. profited and benefitted from the illegal telemarketing calls and it knew or consciously avoided knowing that the leads it purchased and sold were the product of illegal telemarketing calls placed by Co-Defendants herein.

4.     Plaintiff brings this class action complaint against Defendants to halt Defendants' illegal practice of initiating or making or substantially assisting in the initiation or making of unsolicited "robocalls" to cellular telephone numbers throughout California and the greater United States.  Plaintiff also brings this class action against Defendants for initiating or making unsolicited calls to cellular telephone numbers after those numbers had been registered on the National Do-Not-Call Registry and/or Defendant Lead Info Stream Inc.'s internal do-not-call registry.  For her class action complaint, Plaintiff alleges as follows upon personal information as to herself and her own acts and experiences, and, as to all other matters, upon information and belief.

## NATURE OF THE ACTION

5.     This suit asserts allegations that Defendants violated the Telephone Consumer Protection Act (47 U.S.C. §227 *et seq.*) ("TCPA") with their marketing and advertising campaigns by making, or causing to be made, and benefiting/profiting from the making of telephone calls to cellular telephone lines using an artificial or prerecorded voice or an automatic dialing system to deliver a message. By effectuating this telephonic spam, Defendants have caused consumers actual harm, not only because the consumers were subjected to a violation of their right to privacy, but also because of the annoyance and aggravation that necessarily accompanies unsolicited telemarketing

CLASS ACTION COMPLAINT

phone calls, especially the type of the "robocall" nature. Moreover, with respect to telephone calls made to cellular devices, subscribers to cellular services must actually pay their cell phone providers for receipt of such calls or have their planned allotment of cell phone minutes debited by such calls. Most importantly, the "robocalls" are being made in violation of the TCPA – a federal statute specifically prohibiting the type of conduct alleged herein.

6.    The "robocalls" described herein were made by Defendants Lead Info Stream and Promedia Leads which operate various telemarketing call centers, including a call-center in Denver, Colorado which was responsible for the call at issue herein, and another in Guatemala.  Defendants placed the telephone calls using an automatic dialing system and/or placed telephone calls using an artificial or prerecorded voice. Defendants Lead Info Stream and/or Promedia Leads then sold leads they developed from these telemarketing calls to third parties such as Defendant Leadpoint, Inc. and other third-party end-users.  Because the third parties who assisted, profited or benefitted from the illegal telemarketing calls made by Defendants are also liable under the TCPA, Plaintiff reserves the right to amend this Complaint to add additional third parties after conducting focused discovery on which third parties purchased and sold leads generated by Defendants' illegal telemarketing practices.

7.    Specifically with respect to Plaintiff, Defendants Lead Info Stream and/or Promedia Leads sold Plaintiff's information as a "lead" to co-Defendant Lead Point, Inc as "an interested mortgage refinance customer." Defendants Lead Info Stream and/or Promedia Leads also robo-dialed Plaintiff multiple times in connection with a solar panel installation campaign. The end users and lead brokers in this scheme purchased such leads seeking to increase revenue through marketing and advertising campaigns, and in furtherance of such efforts, knew or should have known or consciously avoided knowing that thousands of phone calls were being made by Defendants using an

**CLASS ACTION COMPLAINT**

automatic dialing system or an artificial or prerecorded voice to cellular telephone lines without the express consent of the party called, in violation of the TCPA.

8.      There were multiple calls made and/or bought and sold by Defendants that spawned this Complaint. Specifically, Defendants Lead Info Stream and/or Promedia Leads dialed Plaintiff's cell phone on or about August 12, 2013 with an automatic dialing system and/or automated or prerecorded voice.  Plaintiff's information was then sold as a "lead" to Defendant Leadpoint Inc. as an "interested mortgage refinance customer."  Defendant Leadpoint Inc. sold Plaintiff's information for a profit, although to whom Leadpoint sold the information is currently unknown.

9.      Defendants Lead Info Stream and/or Promedia Leads also made calls to Plaintiff's cellular telephone on at least four other occasions for a solar panel installation campaign Defendant Lead Info Stream conducted under its dba "Promedia." Specifically, Defendant made calls to Plaintiff's cellular telephone on or around Aug. 27, 2013, Sept. 3, 2013, Sept. 5, 2013 and Sept. 12, 2013.  Plaintiff is informed and believes other end-users in addition to Defendant Leadpoint are profiting from Lead Info Stream, Inc's illegal telemarketing practices. Plaintiff intends to amend this Complaint further upon completion of initial fact discovery directed at determining the additional end-users benefitting from such illegal calls made by Defendants.

10.    Defendants Lead Info Stream and/or Promedia Leads made the illegal telemarketing calls complained of herein after Plaintiff had registered her cellular telephone number on the National Do-Not-Call Registry (approximately July of 2013) and after registering her number on Defendants internal do-not-call registry in violation of 47 CFR 1200(d) and (e).  Plaintiff received more than one illegal telemarketing call from Defendants Lead Info Stream and/or Promedia Leads within a 12-month period.

11.    Defendants Lead Info Stream and/or Promedia Leads made, or caused to be made, thousands of such telephone calls to cellular phone numbers using an automatic dialing system and/or an artificial or prerecorded voice to deliver a message without the

CLASS ACTION COMPLAINT

prior express consent of the called party.  The making of such calls to cellular telephone lines using an artificial or prerecorded voice to deliver a message and/or through the use of an automatic telephone dialing system  without the recipients' consent violates 47 U.S.C. § 227(b)(1)(A)(iii).

12.   Plaintiff, on behalf of herself and a class of similarly situated persons in the United States, as more specifically defined herein, brings this suit under the TCPA for injunctive relief and an award of statutory damages, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

13.   This Honorable Court has sole and exclusive jurisdiction over this action under the TCPA.  The TCPA expressly creates a private right of action for damages and injunctive relief by a person who suffers a violation of the statute, and jurisdiction to federal district courts to consider and decide such cases or controversies. 47 U.S.C. § 227(b)(3).  Venue is appropriate in the Southern District of California because Plaintiff resides in the Southern District of California, and Plaintiff received the phone calls that are the subject of this Complaint in the Southern District of California.

## DESCRIPTION OF THE PARTIES

14.    Raoul Bennett is an individual domiciled and residing in the City of Oceanside, County of San Diego, State of California. She received multiple calls made by or on behalf of the Defendants using an automatic telephone dialing system and/or an artificial or prerecorded voice to deliver a message on her cellular telephone both before and after placing herself on the National and Defendant's' internal do-not-call registries.

15.    Defendant Lead Info Stream Inc. is a Delaware corporation headquartered in Denver, Colorado.  Plaintiff is informed and believes Lead Info Stream Inc. also does business as Promedia Leads, which operates call centers in Greeley, Colorado and Guatemala.  Defendant Leadpoint Inc. is a Delaware corporation based in Los Angeles, CA.

**CLASS ACTION COMPLAINT**

## FACTUAL ALLEGATIONS

## General Overview of the TCPA

16.　In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA), in response to a growing number of consumer complaints regarding certain telemarketing practices.

17.　The TCPA regulates, among other things, the use of automated telephone equipment, also known as "autodialers" or "robocalls." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless phone number in the absence of an emergency or the prior express consent of the called party. That section also prohibits the making of calls using an artificial or prerecorded voice to cellular telephone users.

18.　According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

19.　Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute.

20.　The *Telemarketing Sales Rule* provides that it is a "deceptive telemarketing act or practice and violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is

**CLASS ACTION COMPLAINT**

engaged in any act or practice that violates ... § 310.4 of this Rule." 16 C.F.R. § 310.3(b).

21.	The FTC publishes a manual for businesses to help them ensure compliance with the TCPA, entitled *Complying with the Telemarketing Sales Rule* which provides:

> It is a violation of the Rule to substantially assist a seller or telemarketer while knowing — or consciously avoiding knowing — that the seller or telemarketer is violating the Rule. Thus, taking deliberate steps to ensure one's own ignorance of a seller or telemarketer's Rule violations is an ineffective strategy to avoid liability. The help that a third-party provides must be more than casual or incidental dealing with a seller or telemarketer that is not related to a violation of the Rule. For example, cleaning a telemarketer's office, delivering lunches to the telemarketer's premises, or engaging in some other activity with little or no relation to the conduct that violates the Rule would not be enough to support liability as an assistor or facilitator.

> Third parties who do business with sellers and telemarketers should be aware that their dealings may provide a factual basis to support an inference that they know, or deliberately remain ignorant of, Rules violations of these sellers and telemarketers. For example, a third party who provides sellers or telemarketers with mailing lists, helps in creating sales scripts or direct mail pieces, or any other substantial assistance while knowing or deliberately avoiding knowing that the seller or telemarketer is engaged in a Rule violation may be violating the Rule.

## Placing and Receipt of the Calls

22.	At all relevant times Plaintiff, an individual residing in the State of California, was a "person" as defined by 47 U.S.C. § 153(32).

**CLASS ACTION COMPLAINT**

23.     Although Plaintiff did not provide her cellular phone number to Defendants at any time or in any way, and after Plaintiff registered her cellular phone number on the National Do-Not-Call Registry, Defendants made, or caused to be made, and benefited/profited from the making of telephone calls to Plaintiff's cellular telephone using an artificial or prerecorded voice to deliver a message. The telephone calls received by Plaintiff consisted of a prerecorded phone message using an artificial voice to advertise solar powered energy solutions for homeowners and/or interest rate mortgage reductions among other things.  Plaintiff was aware that the call that she received used an artificial or prerecorded voice due to the robotic nature of the voice delivering the message, which, based on Plaintiffs experience, was separate and distinct from the voice used by a natural or "live" person.  Plaintiff was also aware that the call that she received used an artificial or prerecorded voice due to the delay between when Plaintiff answered the call and the beginning of the message.  Similarly, Plaintiff was aware that the call that she received used an artificial or prerecorded voice because Plaintiff attempted to speak yet when she did so, she was unable to interrupt the artificial or prerecorded voice which simply kept delivering its script in a robotic fashion.

24.     Specifically, Defendants made, or caused to be made, and benefited/profited from the making of a telephone call to Plaintiff's cellular phone.  When Plaintiff answered the call, an artificial or prerecorded voice began delivering a message about an opportunity to lower Plaintiff's electric bill by switching to solar power and/or about an opportunity to lower her mortgage interest rate.

25.     Plaintiff is informed and believes and thereon alleges that all telephone contact by Defendants Lead Info Stream and/or Promedia Leads to Plaintiff on her telephone occurred via an "automatic telephone dialing system," or using a system that had the capacity to make automated calls, as defined by 47 U.S.C. § 227(a)(1), and all calls that are the subject of this Complaint occurred within four years of the filing of this Complaint.

**CLASS ACTION COMPLAINT**

26.     The telephone number that Defendants used to contact Plaintiff, using an artificial or prerecorded voice to deliver a message regarding solar power solutions and/or mortgage rate reductions were assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

27.     Plaintiff did not provide "express consent" allowing Defendants to place telephone calls to Plaintiff's cellular telephone line utilizing an "automatic telephone dialing system" or an "artificial or prerecorded voice" to deliver a message within the meaning of 47 U.S.C. § 227(b)(1)(A).

28.     Plaintiff is informed and believes and based thereon alleges that substantially similar telephone calls using an artificial or prerecorded voice to deliver a message were made by Defendants to other individuals' cellular telephone lines, and were similarly made on repeated occasions to other cellular telephone numbers belonging to the other members of the class. None of those cellular telephone subscribers gave Defendants their prior express consent to receive the calls and the calls were not made for emergency purposes.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b) on behalf of herself and all individuals in the United States and its territories who received telephone calls from an automatic telephone dialing system or calls containing an artificial or prerecorded voice on their cellular telephones.  Specifically, the Classes are defined as follows:

Class 1:
All persons in the United States or its territories who, within the last four years, received a telephone call on their cellular telephone which was made by or caused to be made by Defendants using an automatic telephone dialing system and/or an artificial or prerecorded voice.

Class 2:
All individuals in the United States and its territories who received more than one telemarking call within a 12 month period made by Defendant Lead

Info Stream or its dba Promedia Leads to a phone line registered on Defendant Lead Info Stream or its dba Promedia Leads' Do-Not-Call Registry or on the National Do-Not-Call Registry.

30.    The Classes consist of thousands of individuals who are geographically dispersed making joinder impractical, in satisfaction of Federal Rule of Civil Procedure 23(a)(1). The exact size of the respective class and identities of the individual members thereof are ascertainable through Defendants' records, or the records of its representatives, including but not limited to the telephone message or transmission logs.

31.    The claims of Plaintiff are typical of the claims of the respective class members. The claims of the Plaintiff and the respective class members are based on the same legal theories and arise from the same unlawful and willful conduct, resulting in the same injury to the Plaintiff and the respective class members.

32.    The respective classes have a well-defined community of interest. Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the respective class members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the respective class members.

33.    There are many questions of law and fact common to the claims of Plaintiff and the respective class members, and those questions predominate over any questions that may affect only individual class members within the meaning of Federal Rule of Civil Procedure 23(a)(2) and 23(b)(2).

34.    Common questions of fact and law affecting members of the Class include, but are not limited to, the following:

(a)  Whether Defendants' conduct violates 47 U.S.C. § 227(b)(1)(A)(iii);

(b)  Whether the equipment used by Defendants to make the calls alleged herein qualifies as an Automatic Telephone Dialing System within the meaning of 47 U.S.C. §(a)(1);

 (c) Whether Plaintiff and members of the Class are entitled to damages, costs and/or attorney's fees from Defendants;

**CLASS ACTION COMPLAINT**

(d)   Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendants from continuing to engage in their unlawful conduct; and

(e)   Whether Plaintiff and members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

35.    Absent a class action, most of the respective class members would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

36.    Plaintiff will fairly and adequately represent and protect the interests of the respective class members. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the respective class members, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the respective class members.

37.    This action is brought and may properly be maintained as a class action pursuant to the provisions of Federal Rule of Civil Procedure 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these statutory provisions and the jurisprudence of the courts.

## COUNT ONE
## LIABILITY PURSUANT TO THE TCPA

38.    Plaintiff restates and incorporates by reference each and every allegation contained in paragraphs 1 through 35, inclusive, as though fully set forth herein.

39.     Defendants made, or caused to be made, and benefited/profited from the making of telephone calls using an automatic dialing system and/or using an artificial or

**CLASS ACTION COMPLAINT**

prerecorded voice to deliver a message to Plaintiff and the Class Members' telephone lines in violation of 47 U.S.C. § 227 *et seq*.

40.     These calls were made *en masse* without the prior express consent of the Plaintiff or other members of the Class.  None of the calls were made for emergency purposes.

41.     Thus, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii), which makes it unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to any cellular telephone service."

42.     Moreover, Plaintiff is informed and believes and based thereon alleges that Defendants failed to satisfy the requirements set forth by 47 C.F.R. §64.1200 (d), which is a separate and independent violation under the Act. That regulation provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made.  Person or

**CLASS ACTION COMPLAINT**

entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

43.     47 C.F.R. §64.1200 (e) provides that §64.1200 (d) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278 FCC 03-153, 'Rules and  regulations Implementing the Telephone Consumer Protection Act of 1991."

44.     Defendants violated § 64.1200(d) and (e) by making, or causing to be made, and/or benefiting/profiting from and/or assisting in the making of calls for telemarketing purposes cellular telephone subscribers, such as Plaintiff and the Class, without

**CLASS ACTION COMPLAINT**

instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls or texts from them, and in particular by (1) failing to have a written policy for maintaining a do-not-call list; (2) failing to inform and train telemarketing personnel in the existence and use of the do-not-call list; (3) failing to record do-not-call list at the time the request is made; (4) failing to honor called parties' do-not-call requests within a reasonable time from the date such request is made and no later than thirty days from the date such request; and/or (5) failing to provide called parties with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a working telephone number or address at which the person or entity may be contacted.  Plaintiff herein made two such requests to be placed on Defendants' do-not-call list, both of which Defendants ignored.

45.     In addition to Defendants making the calls, Defendant Leadpoint, Inc. and other third parties directly benefitted and profited from the illegal calls and knew or should have known that the calls were being made by Lead Info Stream and/or Promedia Leads in violation of the TCPA thus subjecting them to liability for the violations of the TCPA alleged herein.

## DAMAGES UNDER THE TCPA

46.     Pursuant to 47 U.S.C. § 227(b)(3), a person or entity may bring a private action to recover either actual damages, or $500 in statutory damages for each such violation, whichever is greater.

47.     Accordingly, as a proximate result of the Defendants' conduct, Plaintiff and the Class seek statutory damages as provided by law.

48.     Plaintiff and the alleged Class are also entitled to recover statutory damages, separate and apart from the statutory damages recoverable for the placing of the phone calls, based on Defendants' failure to implement and abide by the procedures outlined by 47 C.F.R. § 64.1200(d) and (e).

**CLASS ACTION COMPLAINT**

49.    In addition, if the court finds that the Defendants willfully or knowingly violated the TCPA, the Court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under 47 U.S.C. § 227(b)(3).

## TCPA INJUNCTIVE RELIEF

50.    Additionally, Plaintiff and the Class is entitled to request that Defendants be enjoined from initiating any more calls to cellular telephone lines using an artificial or prerecorded voice to deliver a message  pursuant to 47 U.S.C. § 227(b)(3)(A) and that Defendants be enjoined from failing to abide the procedures outlined in 47 C.F.R. § 64.1200(d) and (e).

## DEMAND FOR PRESERVATION

51.    Plaintiff specifically demands that Defendants and its agents, employees and affiliates, retain and preserve all records relating to the allegations in this Complaint. Specifically, Plaintiff's demand for preservation includes, but is not limited to, the following documents and information:

(a) Scripts of the prerecorded messages sent over the past four (4) years, with corresponding dates when those messages were sent;

(b) Lists of all phone numbers to which prerecorded phone message advertisements were sent within the last four years;

(c) List of all persons or phone numbers who requested to opt-out of receiving prerecorded phone messages over the past four years;

(d) Any and all documents, including but not limited to invoices, transmission logs, or summary logs, provided to Defendant by any company or person Defendant retained to transmit prerecorded phone messages on Defendant's behalf;

(e) Any proof Defendant contends shows that Defendant obtained the prior express consent of any recipient of Defendant's prerecorded phone messages;

**CLASS ACTION COMPLAINT**

(f) Any and all transmission or phone logs showing dates of transmission, receipt or identity of recipient of prerecorded phone messages placed by Defendant or on Defendant's behalf within the last four years;

(g) Copies of any and all policies or procedures implemented by Defendant with regard to the placement of prerecorded phone messages, as well as marketing activities and restrictions;

(h) Documents related to Defendants cost for transmitting the prerecorded phone messages sent by Defendant or on Defendant's behalf within the last four years; and

(i) Demand is made on Defendants to notify any third parties, customers, or vendors of this preservation demand and request preservation of any information requested through this demand.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, on behalf of herself and as representative of all other persons similarly situated, prays for judgment against the Defendants, as follows:

(1) An Order certifying the Class under the appropriate provisions of F.R.C.P. 23 and appointing the Plaintiff and her counsel to represent the class;

(3) For statutory damages as provided for under 47 U.S.C. § 227(b)(3) plus up to treble that amount for Defendants' willful and knowing violations of the law;

(4) For statutory damages as provided for under 47 U.S.C. § 227(c)(5);

(5) For an injunction restraining Defendants from making any more phone calls using an artificial or prerecorded voice to persons without their prior express consent;

(6) For an injunction restraining Defendants from making any more telemarketing phone calls to individuals who have requested placement on the National or Defendants' do-not-call registry.

(7) For pre-judgment interest from the date of filing this suit;

(8) For reasonable attorney's fees;

(9) For all costs of this proceeding; and

**CLASS ACTION COMPLAINT**

(10) For all general, special, and equitable relief to which the plaintiffs and the members of the class are entitled by law.

## JURY DEMAND

Plaintiff demands trial by jury on all counts for which a jury trial is permitted.

RESPECTFULLY SUBMITTED,

**Dated:  May 28, 2014**                           **RIGHETTI GLUGOSKI, P.C.**

  **s/ Michael C. Righetti_____**
Michael C. Righetti, Esq.
Attorneys for Plaintiff

**CLASS ACTION COMPLAINT**