**MATTHEW RIGHETTI, ESQ. {121012}**
**matt@righettilaw.com**
**JOHN GLUGOSKI, ESQ. {191551)**
**jglugoski@righettilaw.com**
**MICHAEL RIGHETTI, ESQ. {258541}**
**mike@righettilaw.com**
**RIGHETTI • GLUGOSKI, P.C.**
456 Montgomery Street, Suite 1400
San Francisco, CA 94104
Telephone: (415) 983-0900
Facsimile:   (415) 397-9005

**CHARLES A. JONES  ESQ. {SBN 224915}**
**KELLY MCINERNEY ESQ. {SBN 200017}**
**JONES LAW FIRM**
9585 Prototype Court, Suite B
Reno, Nevada 89521
Telephone:  (775) 853-6440
Facsimile:   (775) 853-6445

Attorneys for Plaintiff and the Settlement Class

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAOUL BENNETT, on behalf of herself and all similarly situated persons,<br><br>Plaintiff,<br><br>vs.<br><br>Lead Info Stream Inc., dba Promedia Leads, and LeadPoint, Inc.<br><br>Defendants | Case No.: 3:14-cv-01316-H-JLB<br><br>**NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS AND SERVICE AWARD**<br><br>*Hon. Marilyn L. Huff*<br><br>Date: June 13, 2016<br>Time:10:30 a.m. |

TO ALL PARTIES AND ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on Monday June 13, 2016 at 10:30 a.m. in Courtroom 15A before Hon. Marilyn L. Huff of the United States District Court, Southern District of California, Plaintiff Raoul Bennett ("Plaintiff") in the matter of *Bennett v. Lead Info Stream Inc. dba Promedia Leads and LeadPoint Inc.*, Case No. 3:14-cv-01316-H-JLB, moves the Court for an award of attorneys' fees, costs, and service awards. Specifically, Plaintiff seeks an order for:

(1) an award to Class Counsel ("Class Counsel") of $211,425.00 (or 25% of the Settlement Fund) in attorneys' fees under a common fund approach;

(2) an award to Class Counsel of $70,575.00 in litigation costs; and

(3) service award of $5,000.00 for the Class Representative Raoul Bennett for her service.

Pursuant to the Settlement Agreement, Plaintiff is authorized to apply for an award of reasonable attorneys' fees and litigation costs not to exceed one-third of the Settlement Fund. Defendant LeadPoint does not oppose Class Counsel's requested amount of fees and costs nor the service awards.

This Motion is based on this notice, the following attached Memorandum of Points and Authorities, the Declaration of Matthew Righetti ("Righetti Decl."), the Declaration of Plaintiff Raoul Bennett and all other records, pleadings, and papers on file in this action and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Accompanying this Motion is also Plaintiffs' Proposed Order Granting Attorneys' Fees, Costs, and Service Awards.

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................ *iii-iv*

I. INTRODUCTION ........................................................................................ 1

II. PROCEDURAL HISTORY AND WORK
PERFORMED BY CLASS COUNSEL ................................................. 2

   A. Class Counsel ……………………………………………………...2

   B. Litigation Conducted Up to and Including
      Settlement ……………………………………………………………3

   C. Class Notice and Claim Process ……………………………………..3

   D. Final Approval Motion ………………………………………………4

III. ARGUMENT ............................................................................... …..4

   A. The Court Should Apply the Common Fund Doctrine
      to Award Attorneys' Fees at the 25% Benchmark Rate.................. 4

   B. The Risks Associated with this Litigation Justify
      the Fee Request........................................................................... 6

   C. Class Counsel's Skill and Quality of Work Justify
      the Fee Request ..........................................................................7

   D. The contingency nature of the Fee and Financial Burden
      Carried by Class Counsel Justifies the Fee Request........................8

   E. The Lodestar Cross-Check Confirms the Reasonableness
      of the Fee Award........................................................................8

      1.  Class Counsel's hourly rates are reasonable …………………..9

    2. The number of hours claimed is reasonable ……………………..10

 F. Class Counsel's Costs are Reasonable and
   Compensable from the Settlement................................................10

 G. The Service Awards to the Class Representative
   Is Reasonable ...............................................................................11

IV. CONCLUSION ................................................................................. 12

# TABLE OF AUTHORITIES

*Adams v. AllianceOne,*
    (S.D.Cal. Sept. 28, 2012) No. 08cv0248–JAH, Doc. No. 137 ……………..7

*Amaral v. Cintas Corp. No. 2*,
    (2008) 163 Cal. App. 4th 1157, 1217-18 …………………………………..8

*Bellows v. NCO Fin. Sys., Inc.,*
    (S.D.Cal. July 13, 2009) 07–cv–1413–W, Doc. Nos. 53, 54 ………………7

*Boeing Co. v. Van Gemert*,
    (1980) 444 U.S. 472, 478 …………………………………………………..4

*Camacho v. Bridgeport Fin., Inc.*,
    (9th Cir. 2008) 523 F.3d 973, 979 …………………………………………9

*Cook v. Niedert*,
    (7th Cir. 1998) 142 F.3d 1004, 1016 ……………………………………...11

*Couser v. Comenity Bank*,
    (S.D. Cal. 2015) 125 F. Supp. 3d 1034, 1046 …………………………..5, 11

*Ferland v. Conrad Credit Corp.*,
    (9th Cir. 2001) 244 F.3d 1145, 1149 ……………………………………….9

*Fischel v. Equitable Life Assurance Soc'y of U.S.*,
    (9th Cir. 2002) 307 F.3d 997, 1008 ………………………………………...8

*Gutierrez v. Barclays Grp.,*
    (S.D.Cal. Mar. 12, 2012) No. 10cv1012–DMS, Doc. No. 58 ……………..7

*In re Bluetooth v. Headset Prods. Liab. Litig.*,
    (9th Cir. 2011) 654 F.3d 935, 942 ……………………………………4, 5, 9

*In re Ferrero Litig.*,
    (9th Cir. 2014) 583 F. App'x 665, 667 ……………………………………..5

*In re Media Vision Tech. Sec. Litig.,*
    (N.D.Cal.1996) 913 F.Supp. 1362, 1366 …………………………………11

*In re Mego Fin. Corp. Sec. Litig.*,
   (9th Cir. 2000) 213 F.3d 454, 458 ……………………………………………..11

*Ingram v. The Coca-Cola Co.*,
   (N.D. Ga. 2001) 200 F.R.D. 685, 694 ……………………………………….11

*Jordan v. Multnomah Cnty.*,
   (9th Cir. 1986) 799 F.2d 1262, 1266-1267 …………………………………...9

*Knutson v. Schwan's Home Serv., Inc.*,
   (S.D.Cal. July 14, 2014) No. 3:12–CV–00964–GPC, at *4–5 ……….….…7

*Mills v. Electric Auto–Lite Co.*,
   (1970) 396 U.S. 375, 391–92, 90 S.Ct. 616, 24 L.Ed.2d 593 …………….11

*Moore v. James H. Matthews & Co.*,
   (9th Cir. 1982) 682 F.2d 830, 839 …………………………………………..10

*Paul, Johnson, Alston & Hunt v. Graulty*,
   (9th Cir. 1989) 886 F.2d 268, 271 …………………………………………….5

*Roberts v. Texaco*,
   (S.D.N.Y. 1997) 979 F.Supp. 185, 202 ……………………………………….11, 12

*Rodriguez v. W. Publ'g Corp.*,
   (9th Cir. 2009) 563 F.3d 948, 958 …………………………………………….11

*Staton v. Boeing Co.*,
   (9th Cir. 2003) 327 F.3d 938, 967 …………………………………………..4, 5, 11

*Van Vranken*,
   901 F.Supp. (N.D. Cal. 1995) At 300 …………………………………………11

*Viscanzo v. Microsoft Corp*
   (W.D. Wash. 2001) 142 F. Sup.2d 1299 ……………………………………..…8

*Williams v. MGM-Pathe Communications Co.*,
   (9th Cir. 1997) 129 F3d 1026, 1027 ………………………………………….6

*Wooldridge v. Marlene Indus. Corp.*,
   (6th Cir. 1990) 898 F.2d 1169, 1177 ………………………………………..10

## I.  INTRODUCTION

Plaintiffs seek an award of attorneys' fees pursuant to the common fund doctrine in the amount of $211,425.00 (twenty-five percent of the total Settlement Fund of $845,700.00), an award of $70,575.00 for reimbursement of litigation costs, and a service award of $5,000.00 to Plaintiff.

The common fund doctrine warrants approval of Plaintiff's requested fee award. This Settlement, preliminarily approved by the Court on March 3, 2016, is a fair result for Class Members considering the financial state of the Defendant, the risks associated with maintaining this certified class action through trial, and the likelihood of success on the merits.  An order awarding Plaintiff her requested attorneys' fees and litigation costs is authorized by to the common fund doctrine and the Settlement Agreement.  Furthermore, such an award will compensate Class Counsel for *some* of the time spent litigating this vigorously contested case and reimburse Class Counsel *some* of the substantial costs expended pursuing this action on behalf of the Class Members

In addition, this is a reasonable award because it is commensurate with the awards approved by this and other courts in comparable class actions. Courts in similar consumer and privacy cases routinely award attorneys' fees at the bench mark of the Settlement Fund. This is because such awards encourage the vindication of important rights. Here, Class Counsel took considerable risk to pursue this case and obtained a solid result for Class Members by providing each with the opportunity to submit a claim for compensation for having received allegedly illegal telephone calls for which no reliable records exist.   Class Counsel submit that (1) they obtained a solid result for the Class; (2) they faced considerable risks in prosecuting this litigation; (3) they displayed skillful representation and high quality work in litigation against a defendant represented by experienced counsel who vigorously defended the case, (4) the work  resulted in this Settlement that provided an opportunity recover money for over 40,000 individuals; (4) they carried the heavy financial burden of representing Plaintiff on a contingency basis; and (5) at this juncture not one Class

Member has objected to the settlement, the requested enhancement, or the requested 25% fee and/or cost award. Moreover, Class Counsel are actually seeking a substantial downward adjustment of Class Counsel's lodestar, i.e. from $365,815.00 to $211,425.00. Plaintiffs' fee request for $211,425 represents 58% of Class Counsel's lodestar– and the requested percentage of Class Counsel's total lodestar has indeed decreased in light of the time Class Counsel spent responding to questions from Class Members during the notice and claim period as well as time spent preparing Plaintiff's motion for final approval and this motion for fees, costs, and service awards.

Likewise, Plaintiffs' request for reimbursement of costs of $70,575.00 should be approved. Class Counsel have incurred $74,219.71 in actual costs to date, which will only increase with the additional costs necessary to finalize this Settlement.

Finally, a service award of $5,000.00 for Plaintiff is appropriate because she assumed the financial and reputational risk serving as the class representative in this action, she turned down two settlement offers from Lead Info Stream's CEO in the amount of $10,000.00 (i.e. *twice* the amount requested herein) to pursue the case on behalf of the Class, and she spent considerable time assisting with the prosecution and resolution of this case, which included providing a full day of deposition testimony and attending a settlement conference. Defendant does not oppose the service award. Plaintiff has agreed to a general release of all potential claims against Defendant, beyond the more narrow Class release. The requested service award also falls well within the range of service awards routinely granted by courts.

Based on the foregoing, Plaintiff respectfully requests that the Court grant her motion and approve the requested attorneys' fees, costs, and service award.

## II.  PROCEDURAL HISTORY AND WORK PERFORMED BY CLASS COUNSEL

### A. Class Counsel.

Class Counsel, Righetti Glugoski, P.C. is a well-respected firm of the class and collective action bar, with extensive experience in this highly-specialized type of

litigation. Righetti Decl. at ¶¶ 2-7.  Class Counsel's qualifications were also set forth in support of Plaintiff's motion for preliminary approval.

## B. Litigation Conducted Up to and Including Settlement.

Plaintiff set forth in detail the history of this case and the extensive work that went into achieving the settlement in her motion for preliminary approval.   For the sake of avoiding repetition Plaintiff will not restate the procedural history of the case here; however, Plaintiff provides the following update regarding the class notice and claim process and Plaintiff's motion for final approval.

## C. Class Notice and Claim Process.

On March 3, 2016, the Court issued an Order (1) Certifying Class For Settlement Purposes (1) Preliminarily Approving Class Settlement (3) Approving Class Notice; and (4) Scheduling Fairness Hearing (ECF Doc. No. 92).  After receiving the Court's Order, Class Counsel worked diligently with Defendant and the Claims Administrator to ensure that Class data was being provided in accordance with the terms of the Settlement Agreement and that the Court's deadlines for Notice would be met.  Class Counsel reviewed, revised and finalized the email and physical notices being mailed to Class Members.  Pursuant to the Court's Order, the Court-approved settlement administrator, Heffler Claims, sent notice to Class Members on March 11, 2016.  The email blast was sent to 40,666 email addresses and 1,953 notices were physically mailed to class members for whom Defendant did not have a valid email address.  Following the email blast, 391 emails "bounced" back due to, e.g. an invalid email address, and Heffler re-mailed those individuals physical notices.  See Decl. of Matthew Righetti ¶ 8 as well as a true and correct copy of the most recent Heffler mailing and claim status report, which is attached to the Righetti Decl. as Exhibit 1.

Almost immediately after notices were emailed and mailed, Class Counsel began receiving numerous phone calls and emails from class members to discuss the nature of the case, the claims being released, and the potential recovery available to Class Members who submit valid claims. This was not surprising as the notices were sent to over 42,000 people and included Class Counsel's complete contact information.

Class Counsel made themselves available at every opportunity to receive these calls and discuss the issues with Class Members as well as respond to emails promptly. The calls and emails continued for several weeks, and we continue to receive communications from Class Members regarding the settlement. This work requires a substantial amount of time and effort for Class Counsel and paralegals. Decl. of Matthew Righetti ¶ 9.

### D. Final Approval Motion.

The time period during which Class Members may submit claims, request exclusion or object to the settlement expires on April 25, 2016; thus, the process has not yet concluded. Once the deadline has passed and Heffler has processed all of the responses from Class Members, Plaintiff will present the Court with a motion for final approval of the class settlement with supporting declarations showing the results of the claim process. To date, there have been no objections or requests for exclusion, and the parties are meeting and conferring over the contents of a reminder notice to email and mail to Class Members. The deadline to file the motion for final approval is May 16, 2016 pursuant to the Court's Order Granting Preliminary Approval. Decl. of Mathew Righetti ¶10.

### III. ARGUMENT

**A. The Court Should Apply the Common Fund Doctrine to Award Attorneys' Fees at the 25% Benchmark Rate.**

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorney's fees from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Ninth Circuit routinely awards attorneys' fees under the common fund approach "[b]ecause the benefit to the class is easily quantified in common-fund settlements" and avoids the "often more time-consuming task of calculating the lodestar." *In re Bluetooth v. Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) (same). The common fund approach is an appropriate method for awarding attorneys' fees because it "ensures that each

member of the winning party contributes proportionately to the payment of attorneys' fees." *Staton*, 327 F.3d at 967. This approach ensures that class members, who have accepted the benefits from a common fund recovery, also accept their fair *pro-rata* responsibility to contribute towards the attorneys' fees and costs that created the fund in the first place. *Id*.

A common fund award of attorneys' fees and costs is appropriate here because Plaintiff has created an ascertainable common fund from which reasonable attorneys' fees can be recovered. The proposed Settlement creates a common fund of $845,700.00 to pay up to $20.00 to all Class Members who submit valid claims. Thus, the common fund doctrine enables the Court to determine a reasonable fee with "some exactitude." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). The requested award ensures that Class Counsel receive an appropriate fee award for their substantial efforts litigating this case, the result of which created an actual benefit to the Class Members who submit claims. *Id.*

This Court has approved attorneys' fees awards in common fund class action settlements, like this case. *See In re Ferrero Litig.*, 583 F. App'x 665, 667 (9th Cir. 2014) [A monetary fund of $550,000 was established to partially reimburse class members who had purchased Nutella and provided for substantial injunctive relief requiring Ferrero to revise its advertising campaign for Nutella and to supply more nutritional information on Nutella's label. The Court approved the settlement and made an overall attorneys' fee award of $985,920, which was upheld by the Ninth Circuit].

Other courts in the Southern District use the same method in TCPA cases. *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1046 (S.D. Cal. 2015) [Because this Settlement has produced a common fund for the benefit of the entire class, the Court elects to award fees under the percentage-of-recovery method. *See In re Bluetooth,* 654 F.3d at 942; *see also Hanlon,* 150 F.3d at 1029 ("In 'common-fund' cases where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method."). . .It is well

established that 25% of the gross settlement amount is the benchmark in the Ninth Circuit for attorneys' fees awarded under the percentage method.]

The Ninth Circuit has also approved attorney fee awards in cases where the settlement includes a reversion of unclaimed funds to the defendant. *Williams v. MGM-Pathe Communications Co.*, 129 F3d 1026, 1027 (9th Cir. 1997) [Despite the reversionary aspect of the settlement, the Ninth Circuit reversed the district court for refusing to award attorney-fee awards on the entire settlement fund, stating that "attorneys for a successful class may recover a fee based on the entire common fund created for the class, even if some class members make no claims against the fund so that money remains in it that otherwise would be returned to the defendants.]

### B. The Risks Associated with this Litigation Justify the Fee Request.

Class Counsel have taken considerable risk in litigating this case not just because it has been done on a wholly contingent basis, as discussed below, but also because both Defendants, LeadPoint Inc. and Lead Info Stream Inc. had several considerable defenses to Plaintiff's claims that made success far from certain. Prior to reaching the settlement, Defendants vigorously contested the allegations in this case by 1) twice seeking to dismiss Plaintiff's complaint, 2) moving for summary judgment, 3), contesting Plaintiff's motion for class certification 4) twice moving to stay the case, 5) moving to decertify the case, and 6) contesting the manner and form of notice. Moreover, Lead Info Stream declared bankruptcy along the way, and LeadPoint provided audited financials demonstrating that it too would likely follow Lead Info Stream into bankruptcy and would never be able to pay Plaintiff's judgment on behalf of the Class should she prevail at trial. The settlement presented to the Court was thus the best possible scenario available to the parties because it 1) provided Class Members with the opportunity to recover fair value for the alleged harm based on similar TCPA settlements, 2) provided Defendant with finality and the ability to continue operating, 3) provided Plaintiff with the ability to request a service award for the time spent and expense incurred on behalf of Class Members, and 4) provided Class Counsel with the opportunity to recoup *some* of their litigation costs

6
PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

and receive compensation for *some* of their time spent litigating this case for the benefit of the entire Class. Had this matter proceeded to trial, costs and fees for both parties would have increased exponentially and the risks to both parties were such that the settlement presented a fair compromise to resolve protracted litigation. It is likely for this reason that when the parties engaged the assistance of Magistrate Judge Jill L. Burkhardt, she expressed the opinion that the settlement presented the best possible scenario for both parties, and encouraged the parties to continue working towards a resolution. See Righetti Decl. ¶ 11.

**C. Class Counsel's Skill and Quality Work Justify the Fee Request.**

As discussed in this brief and in Plaintiff's motion for preliminary approval and supporting documentation, Class Counsel have demonstrated substantial skill and diligence pursuing this case. The amount of work and high quality of work directly resulted in this settlement and the creation of a common fund of $845,700.00. In an unsettled area of law, Plaintiff achieved class certification, defeated summary adjudication, defeated decertification and successfully negotiated a potential recovery that is line with other TCPA settlements for over 42,000 affected individuals. See, *Knutson v. Schwan's Home Serv., Inc.,* No. 3:12–CV–00964–GPC, 2014 WL 3519064, at *4–5 (S.D.Cal. July 14, 2014) (approving TCPA settlement where 166 Class Member claimants could recover $20 settlement check plus a $80 merchandise voucher); *Gutierrez v. Barclays Grp.,* No. 10cv1012–DMS, Doc. No. 58 (S.D.Cal. Mar. 12, 2012) (approving TCPA settlement where each of the approximate 66,000 class members claimants received approximately a $100 credit or settlement check); *Adams v. AllianceOne,* No. 08cv0248–JAH, Doc. No. 137 (S.D.Cal. Sept. 28, 2012) (approving settlement for $40 monetary payment to approximately 63,573 claimants); *Bellows v. NCO Fin. Sys., Inc.,* 07–cv–1413–W, Doc. Nos. 53, 54 (S.D.Cal. July 13, 2009) (approving TCPA class settlement where the 29 class member claimants received $70). No doubt the recovery afforded to Class Members who submit valid claims is in line with other TCPA settlements.

### D. The contingency nature of the Fee and Financial Burden Carried by Class Counsel Justifies the Fee Request.

The risks associated with the contingent nature of this action further justify the requested fee. Indeed, "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002) (internal citation omitted). By undertaking a class action on a contingency fee basis, counsel not only must turn away other income-generating opportunities but must take on a substantial risk of "never receiving compensation *at all*." *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1217-18 (2008).

In the present case, Class Counsel has worked on this case since before May of 2014, and in effect has loaned their legal services to the Plaintiff and Class Members since that time. Class Counsel has prosecuted this case on a wholly contingent basis, and done so at great risk of never receiving any compensation due to the risky nature of class action litigation in general, and due to the developing law in this Circuit with respect to the Telephone Consumer Protection Act, specifically shifting standards regarding express consent and vicarious liability. In addition to the contingent risk of this case, Class Counsel's representation of Plaintiff and Class Members in this action forced us to forego other cases. Decl. of Matthew Righetti ¶12.

### E. The Lodestar Cross-Check Confirms the Reasonableness of the Fee Award.

The Ninth Circuit has approved two methods of determining attorneys' fees in class action cases where, as here, the amount of the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino*, 290 F.3d at 1047. Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir.

2002). In contrast to the common fund method, determining the lodestar amount is "often more timeconsuming[.]" *Bluetooth*, 654 F.3d at 942. Under the lodestar method, the Court determines the lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). The Ninth Circuit recommends that district courts apply one method but cross-check the appropriateness of the amount by employing the other, as well. *See Bluetooth*, 654 F.3d at 944.

### 1. Class Counsel's hourly rates are reasonable.

Plaintiff requests that the Court cross-check the percentage of the common fund method using the following hourly rates: $750/hour for Matthew Righetti, $400/hour for Michael Righetti, and $150/hour for paralegal time. See Righetti Decl. ¶13-16. Class Counsel are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similarly complex federal litigation. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) ("the established standard when determining a reasonable hourly rate is the 'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation'"); *Jordan v. Multnomah Cnty.*, 799 F.2d 1262, 1266-1267 (9th Cir. 1986) ("'judges awarding fees must make certain that attorneys are paid the full value that their efforts would receive on the open market in non-civil-rights cases . . . .'").

Here, Class Counsel's hourly rates are reasonable in light of their significant experience, expertise, and skill. Class Counsel have had its hourly rates approved by numerous courts in the past several years. Even without accounting for contingent risk, Class Counsel's rates are well within the range of rates charged by similarly experienced and qualified attorneys practicing in this area. Righetti Decl. at ¶¶ 13-16.

### 2. The number of hours claimed is reasonable.

Under the lodestar method, attorneys are entitled to be compensated for "every item of service which, at the time rendered, would have been undertaken by a

reasonable and prudent lawyer to advance or protect his client's interest . . . ." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). "[T]he standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990).

Here, Class Counsel, to date, have expended 655.2 hours of attorney time and 145.8 hours of paralegal time to reach this Settlement and monitor the Settlement process. Righetti Decl. at ¶¶ 17-22. A breakdown of Class Counsel's hours is marked and attached to the Righetti Decl. as Exhibit 2. These hours reflect reasonable spent time litigating this case, which Class Counsel sought to efficiently manage, staff and assign the work between attorneys and to avoid duplication of effort. Righetti Decl. at ¶ 19. It should also be emphasized that Class Counsel's lodestar does not include all of the time they will spend moving for final approval of settlement, attending the final approval hearing, supervising settlement administration, and communicating with Class Members in the future about the settlement. Class Counsel estimates that these future tasks will likely require an additional 30-40 hours of work. *Id.* Despite Class Counsel's lodestar totaling $365,815.00, Plaintiff is requesting $211,425.00, which is a negative multiplier of approximately 0.58.

**F. Class Counsel's Costs are Reasonable and Compensable from the Settlement.**

Plaintiff also requests reimbursement of taxable costs and other litigation-related expenses reasonably and necessarily incurred in this litigation in the amount of no more than $70,575.00. Total costs incurred to date equal $74,219.71. Righetti Decl. at ¶ 22. A summary of costs incurred by Class Counsel is attached to the Righetti Decl. as Exhibit 3. If the Settlement remains unopposed as expected, Plaintiffs estimate a final cost figure of approximately $75,000.00 to 76,000.00 to finalize the Settlement. *Id.* To date, there have been no objections to these costs. *Id.*

Reasonable litigation expenses are ordinarily included in a common fund settlement for alleged violations of the TCPA, like the one we have here. "Class Counsel are entitled to reimbursement of the out-of-pocket costs that they reasonably incurred investigating and prosecuting this case." *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1049 (S.D. Cal. 2015), quoting *In re Media Vision Tech. Sec. Litig.*, 913 F.Supp. 1362, 1366 (N.D.Cal.1996) (citing *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 391–92, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970)); *Staton,* 327 F.3d at 974.

### G. The Service Award to the Class Representative Is Reasonable.

The Court should approve the requested $5,000.00 service award to the Named Plaintiff and Class Representative because the award is just, fair, and reasonable. Service awards are common in class action cases. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases."); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Van Vranken*, 901 F.Supp. At 300 (N.D. Cal. 1995) (named plaintiff received $50,000 for work in class action). These service awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. Thus, a service award is an appropriate incentive to encourage and reward named plaintiffs for participating in the lawsuits. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). The factors courts use in determining service awards include: (1) time and effort that representatives put into the litigation; *see Van Vranken*, 901 F.Supp. at 299; *Cook*, 142 F.3d at 1016; (2) risks of retaliation, *see Roberts v. Texaco*, 979 F.Supp. 185, 202 (S.D.N.Y. 1997); *Cook*; 142 F.3d at 1016; (3) whether the litigation will further the public policy underlying the statutory scheme, *see Roberts*, 979 F.Supp. at 201 n.25; and (4) a comparison between the service awards and the range of monetary recovery available to the class; *see Ingram*

1  *v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001); *Roberts*, 979 F.Supp. at
2  204.

3        Each of these factors supports Plaintiff's requested service award herein. First, Ms. Bennett spent a considerable amount of time assisting this investigation and actively prosecuting this action. Her efforts included: providing extensive intake interviews regarding her individual experiences receiving telemarketing calls from Defendants; looking for and reviewing relevant documents; reviewing and approving documents, pleadings and other discovery throughout the case; sitting for her deposition; communicating with Class Counsel regarding mediation and settlement opportunities; attending a mandatory settlement conference; and reviewing and signing the Settlement and related documents. See Decl. of Raoul Bennett attached to the Righetti Decl. as Exhibit 4.

      Second, and perhaps most importantly, Ms. Bennett turned down several settlement offers that came directly from Defendants at the outset of this litigation. After Plaintiff filed her case, she began receiving telephone calls directly from Lead Info Stream's Chief Executive Office Tom Cutshall who was offering to pay her to settle her claim on her own behalf. During his last and final attempt to entice Plaintiff to settle her claims on an individual basis, he offered her $10,000, but she refused, explaining that she brought this case to stop Defendants' illegal practices and seek relief on behalf of all affected individuals. Ms. Bennett put the claims of the class members ahead of her own, and her conduct should be rewarded with a service award. See Bennett Decl. Ex 4 to Righetti Decl.

### IV.  CONCLUSION

      For the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion and award Class Counsel fees of $211,425.00, and costs of $70,575.00 as well as services awards to the Named Plaintiff and Class Representative in the amount of $5,000.00.

| | | |
|---|---|---|
| 1 | Date: April 7, 2016 | Respectfully submitted, |
| 2 | | RIGHETTI GLUGOSKI |
| 3 | | |
| 4 | | */S Michael Righetti*<br>Michael Righetti |
| 5 | | Attorneys for Plaintiff and Class Counsel |